UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHRISTOPHER DRISCOLL,<br>  Plaintiff,<br><br>  v.<br><br>BRYANT UNIVERSITY and JAY<br>AMRIEN,<br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 16-633-JJM-LDA

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Christopher Driscoll is a former Physician's Assistant ("PA")[1] student at Bryant University. After the school and the program director, Jay Amrien, decelerated[2] him for poor performance, Mr. Driscoll brought this suit alleging disability discrimination and breach of contract. Bryant University and Mr. Amrien (collectively "Bryant") now move for summary judgment. ECF No. 32. Because the Court finds that Bryant did not violate the Americans with Disabilities Act ("ADA") or the Rehabilitation Act, and did not breach its contract with Mr. Driscoll, the Court GRANTS the Defendant's Motion for Summary Judgment.

---

[1] "A PA is a medical professional who works with a physician as part of a healthcare team." ECF No. 33-2 at 5. A PA performs a variety of tasks, including physical exams, test ordering, diagnoses, medication prescriptions, and various medical procedures. *Id.*

[2] Rather than being dismissed, a decelerated student is "held back" and must re-take the failed course at its next offering before being able to proceed in the program. *Id.* at 22.

## I.   BACKGROUND

In 2015, Bryant accepted Mr. Driscoll into its PA Program. ECF No. 39 at 5-6, ¶ 24. Bryant's PA Program is rigorous and involves frequent testing, about one exam every week, on many subjects. *Id.* at 1-2, ¶¶ 1-6. To proceed through the program, students must maintain a 3.0 GPA (75% or greater). *Id.* at 2, ¶ 8. If a student fails to obtain a 3.0 GPA for a term, that student will be placed on academic probation. ECF No. 33-2 at 20. If the student fails to attain the necessary 3.0 GPA for two terms, that student is subject to dismissal. *Id.* Despite, or perhaps because of the program's rigors, the school offers a generous remediation program that gives struggling students many ways to correct failing grades. ECF No. 39 at 3, ¶¶ 9-11. When a student fails a test, academic support is notified, and the student meets with faculty to address the issue. ECF No. 33-2 at 21. Further, the student *may* take a remediation test[3] and if the student passes the test, the failing grade will be replaced with a 75% (the minimum passing grade). *Id.*

If a student fails an entire course, that student is placed on academic probation and must take a comprehensive course exam. *Id.* Failure of this exam results in deceleration. *Id.* Only two courses may be remediated during a single term and more than two failed courses within a term will result in dismissal from the program. *Id.*

---

[3] This test, more like a homework assignment, is created by the professor and contains content like that of the failed exam. ECF No. 40-3 at 4-5, ¶¶ 15-24, 1-8. A student can remediate a maximum of two tests each term. ECF No. 33-2 at 21.

Mr. Driscoll did not begin his time at Bryant under the best circumstances.[4] During Mr. Driscoll's first term he failed three out of fourteen total exams (*see* ECF No. 35-15) and finished the term with a 2.86 GPA (ECF No. 33-16). A month into his second term, the Academic Support and Remediation Committee placed Mr. Driscoll on academic probation. *Id.* Several weeks later, Mr. Driscoll requested an accommodation for his Attention Deficit Hyperactivity Disorder ("ADHD"). ECF No. 39 at 13, ¶¶ 59-60. Bryant responded and, upon receipt of a doctor's note, promptly granted Mr. Driscoll an accommodation of time-and-a-half for each exam. *Id.* at 13-14, ¶¶ 62-66. Bryant made clear to Mr. Driscoll that it was his "responsibility to meet with professors to make practical arrangements for each accommodation." ECF No. 33-19. Bryant emphasized that "[f]aculty members are not required to provide accommodations unless the student follows through on all arrangements within the established timeframes." *Id.*

The PA Program's daily schedule was intense, with classes and exams being held in back-to-back time slots. Therefore, the time-and-a-half accommodation affected Mr. Driscoll in a specific way: If he used his accommodation, he would miss part of the group exams[5] (ECF No. 39 at 14, ¶ 67), these allowed students to re-take the exam as a group right after taking it alone. *Id.* at 4, ¶¶ 15-17. The groups had

---

[4] Mr. Driscoll's application listed many falsehoods, including medals and ribbons that he did not earn and accomplishments and experiences in combat that he did not have. ECF No. 39 at 6-7, ¶¶ 26-34. Bryant learned about these falsehoods but continued to work with Mr. Driscoll even though they could have dismissed him on those grounds. *See* ECF No. 33-14.

[5] This practice was terminated in Mr. Driscoll's final term. ECF No. 39 at 5, ¶ 22.

the opportunity to receive additional points on their own exams if the group did well.[6] ECF No. 39 at 5, ¶ 21. Mr. Driscoll received whatever points his group earned, but often missed some of the group exams. He raised no concern about the practical arrangement of his accommodation with his professors or PA Program staff; there is transcript evidence where he complained to Professor Christopher Furbee about the general rigors of the program and Professor Furbee responded that the schedule structure could not be changed. ECF No. 33-22 at 22, ¶¶ 2-25; ECF No. 40-4 at 8, ¶¶ 10-17.

Mr. Driscoll also alleges that he was twice denied his time-and-a-half accommodation. Once he had to leave his Urology exam without the extra half-hour accommodation because a Psychiatry group presentation was scheduled to begin right after the exam. *Id.* at 15, ¶ 71. He failed the exam with a 74%. ECF No. 33-15 at 6. Mr. Driscoll also alleges that Bryant did not give him his accommodation for another exam, but merely cites his own deposition as evidence of this allegation. ECF No. 40 at 5-6, ¶¶ 43, 50-51.

Mr. Driscoll failed ten out of the fifteen exams during his second term.[7] *See* ECF No. 33-15. Ultimately, for his second term, after the two failing grades were remediated, Mr. Driscoll finished the term with a 2.92 GPA, short of the 3.0 GPA required to progress in the program. ECF No. 39 at 16, ¶ 75. Mr. Driscoll entered

---

[6] If the group earned a 90-93%, the individuals each received another point on their exam, if the group earned a 94-96% two more points, and if the group earned a 97% or above, each student earned three points. ECF No. 39 at 5, ¶ 21.

[7] Six of those failures occurred before the accommodation was granted.

his third and final term on academic probation. ECF No. 33-20. For this term, Mr. Driscoll had his full accommodation for every exam.[8, 9] Mr. Driscoll's third semester went no better than his first two and he failed eleven out of eighteen exams. *See* ECF No. 33-15. In Clinical Medicine Three, Mr. Driscoll failed five of six exams. ECF No. 39 at 16, ¶ 76.

Mid-way through his final term, Mr. Driscoll met with his advisor (Professor Christopher Furbee) and the Program Manager (Kayla Cetrone) to discuss his performance in Clinical Medicine Three. *Id.* at 17, ¶¶ 80-81. For the first time, Mr. Driscoll told Professor Furbee and Ms. Cetrone that he felt at a disadvantage because he missed some group exams. *See* ECF No. 39. He also asked to see his previous exams, even though it is against school policy to provide old exams to students. *Id.* at 17, ¶¶ 82-83. During this meeting, the three set up a time for Mr. Driscoll to take the remedial comprehensive exam for his failing Clinical Medicine Three course grade. *Id.* at ¶ 84. Professor Furbee even gave Mr. Driscoll permission to view his earlier exams to prepare for the exam. *Id.*

---

[8] As each alleged failure to provide the accommodation occurred in earlier terms, it can be inferred that Mr. Driscoll was given his full accommodation for every exam during his third term.

[9] More specifically, Mr. Driscoll had his full accommodation in his Orthopedics course and attended the exam review/group exam period (ECF No. 33-22 at 6, ¶¶ 11-14) and yet he was on track to fail that course as well. *See* ECF No. 33-15. The exam review conducted in this class was much more in depth than the standard process because the professor directed the class through every question as opposed to having the students re-take the test without instructor supervision. ECF 40-1 at 14, ¶¶ 5-10.

Unfortunately for Mr. Driscoll, despite the significant help and deviation from school policy, he failed the comprehensive exam with a 68%. ECF No. 33-26. Because he was also on track to fail several other courses, the staff decided to decelerate him at that point rather than waiting until the end of the term when he would be subject to dismissal. The Academic Support and Remediation Committee subsequently informed Mr. Driscoll that he would be decelerated. ECF No. 33-26. Mr. Driscoll appealed this decision, but Mr. Amrien and the Provost independently affirmed the deceleration decision. ECF Nos. 33-28; 33-30.

Also, during the summer of 2016, there was construction happening at the PA campus. ECF No. 33-11 at 17, deposition page 156, ¶¶ 3-7. Mr. Driscoll argues that the noise exacerbated his ADHD, affecting his ability to take tests. He asserts that he could not seek an accommodation for the noise because the Academic Center for Excellence ("ACE") office (the office that received requests for accommodations) was closed because of the construction. ECF No. 1 at 4-5, ¶40. Bryant disputes this through an affidavit from Carol DeMoranville, the supervisor of ACE, asserting that there is always a point person on staff and that at no point in 2016 was the office closed for an extended time. ECF No. 33-18 at 2-3, ¶¶ 4, 8-9.

Mr. Driscoll declined to return to the program for the subsequent Fall term in a decelerated capacity. He then underwent a full neurological exam and was diagnosed with ADHD. ECF No. 42. Following that diagnosis, he brought this suit against Bryant University and Mr. Amrien, alleging claims for violating the ADA and

the Rehabilitation Act and for breach of contract. ECF No. 1. Bryant now moves for summary judgment on all counts. ECF No. 32.

## II. STANDARD OF REVIEW

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the non-moving party. *Continental Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Federal Rule of Procedure 56(a) dictates that summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III. DISCUSSION

When considering the undisputed facts of this case, the Court must review Bryant's decision with deference to the school's judgment in the matter. *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). The Court should not override the decision unless Bryant substantially departed from norms or failed to use professional judgment. *Id.* "[M]atters of academic judgment are generally better left to the educational institutions than to the judiciary and [courts] have accorded great deference where such matters are at issue." *Mangla v. Brown Univ.*, 135 F.3d 80, 84 (1st Cir. 1998). In this posture of deference, the Court turns to Mr. Driscoll's claims against Bryant and Bryant's arguments that those claims should be dismissed.

## A. Breach of Contract:

Rhode Island law makes it clear that the relationship between a student and a private school is contractual. *Gorman v. St. Raphael Academy*, 853 A.2d 28, 34 (R.I. 2004). It is well established that the student handbook contains the student-school contract. *Id.* That said, the Rhode Island Supreme Court has cautioned that this student-school contract is unique and "does not require strict adherence to contract law." *Id.* A court should construe such a contract in a way that gives the school room to interpret and modify the contract in ways to best conduct its mission. *Id.* The First Circuit, applying Rhode Island law, determined that the student-school contract must be examined in accordance with a "reasonable expectations" standard. *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007); *Mangla*, 135 F.3d at 83; *Lyons v. Salve Regina College*, 565 F.2d 200, 202 (1st Cir. 1977). The reasonable expectations standard requires that the contract be interpreted in line with the student's reasonable expectations. *Havlik*, 509 F.3d at 34.

Here, the PA Program Student Handbook represents the contract between Bryant and Mr. Driscoll. Mr. Driscoll argues that, although he sought help after failing exams, the school never followed through with its promise to have a meeting "with both the assigned advisor and the course director to address the low score and to develop a study/remediation plan to address the learning deficits," ECF No. 33-2 at 21, and thus breached the contract. ECF No. 1 at 5 ¶¶ 46-47. Bryant argues that there was no such breach, and even if there were, the fact that Mr. Driscoll lied extensively on his application means he breached first, removing Bryant's obligation

to perform. ECF No. 32-1 at 44. The Court need not reach the latter argument because it finds from the undisputed facts that Bryant's conduct did not breach the contract.[10]

A remediation plan can mean many different things depending on the particular student. The undisputed record reveals that Bryant provided Mr. Driscoll with a remediation plan to assist him with his progress through the PA Program. Bryant quickly granted his requested time accommodation. Bryant contacted him after he failed exams and allowed him to take remediation assignments. Bryant recommended and provided methods and tools to aid in his studies and met with him often to discuss his grades and progress through the program. Bryant gave Mr. Driscoll the opportunity to review his old exams because he said it would help him pass the comprehensive exam even though it was against school policy to do so. Finally, Bryant decelerated Mr. Driscoll instead of dismissing him from the program, giving him another opportunity to get on track with his studies. The Court finds that Bryant's conduct provided Mr. Driscoll with the assistance as promised in the handbook. Bryant thus did not breach the contract.

Moreover, Mr. Driscoll has failed to provide any evidence showing that his expectations of his rights under the contract were reasonable. In fact, Mr. Driscoll expressly stated to Professor Furbee that his only expectation of the program was

---

[10] Mr. Driscoll also argues that Bryant breached the contract by failing to substitute in his remediation grades. ECF No. 38-1 at 14. But this was not alleged in the complaint nor is there any record evidence to support this point. The record shows that two grades, in the allegedly offending term, were remediated.

that he be able to see his old exams. ECF No. 33-22 at 13, ¶¶ 11-16. Bryant provided those exams, and many other opportunities during his three terms to change the trajectory of his education. The university followed the student handbook and worked with Mr. Driscoll in ways that far exceeded their mandate of providing a "remediation" plan. Any expectations that go beyond Bryant's actual conduct are unreasonable. The Court therefore finds that Bryant did not breach the contract.

### B. ADA and Rehabilitation Act

Mr. Driscoll brings claims under the ADA and Rehabilitation Act. Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . ." 42 U.S.C. § 12181(a). The statute also stipulates that "a failure to make reasonable modifications ... when necessary" is discrimination unless the entity in question can show that "such modifications would fundamentally alter the nature" of the program. 42 U.S.C. § 12181(b)(2)(A)(ii).

Similarly, the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. . ." 29 U.S.C. § 794(a). The purpose of the Rehabilitation Act is to ensure that disabled individuals have access to and are treated equally within federally

funded programs. *Alexander v. Choate*, 469 U.S. 287, 304 (1985) (citing *Se. Cmty. College v. Davis*, 442 U.S. 397 (1979)).

Claims falling under both the ADA and the Rehabilitation Act require Mr. Driscoll to prove that (1) he has a disability as defined by the statutes, (2) he was "otherwise qualified" for the program, (3) the statutes apply to Bryant, and (4) that Bryant discriminated against him as an individual with a disability (for example, failing to provide a reasonable accommodation). *See* 42 U.S.C. § 12182(a), 29 U.S.C. § 794(a). Mr. Driscoll makes two arguments in support of his ADA and Rehabilitation Act claims. First, he alleges that Bryant did not give him the full measure of his accommodation; second, he alleges that the accommodation given had the effect of denying him the full benefits of the program. ECF No. 1 ¶ 33-34. Bryant first argues that Mr. Driscoll was not qualified to be admitted and matriculate into the program because his application was full of false accomplishments.[11] ECF No. 32-1 at 34. Alternatively, Bryant argues that the fact that Mr. Driscoll was not qualified was obvious from his poor performance even in the face of Bryant's remediation program and other accommodations.

It is uncontested that Mr. Driscoll has ADHD and that ADHD is a disability under both statutes. It is also uncontested that Bryant is "a place of public accommodation" under the ADA, *see* 42 U.S.C. § 12181(7)(1), and Bryant receives federal funds so is subject to the Rehabilitation Act, *see* 42 U.S.C. § 794(a) and

---

[11] Bryant has offered no evidence to suggest that Mr. Driscoll would not have been accepted without the fake medals and stories.

(b)(2)(A). The Court focuses its analysis on the second "otherwise qualified" prong and concludes that Mr. Driscoll has failed to establish that he was otherwise qualified to complete Bryant's PA Program.

"An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Se. Comty. College*, 442 U.S. at 406. *See* 45 C.F.R. § 84.3(l)(3) (an otherwise qualified student is one who has the necessary knowledge and skill to be accepted into and perform successfully in a given program). When determining if a plaintiff is otherwise qualified, "it is necessary to take into account the extent to which reasonable accommodations that will satisfy the legitimate interests of both the school and the student are (or are not) available and, if such accommodations exist, the extent to which the institution explored those alternatives." *Wynne v. Tufts Univ. Sch. of Med. (Wynne II)*, 976 F2d 791, 792 (1st Cir. 1992) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 24-26 (1st Cir. 1991)). Therefore, Mr. Driscoll must show that he communicated to Bryant that there was a reasonable accommodation that would have allowed him to perform successfully and to meet the program requirements.

The undisputed facts show that Mr. Driscoll put forth maximum effort in his courses. Mr. Driscoll himself testified that he obtained outside tutoring, test preparation materials, and worked with staff extensively. ECF No. 33-11 at 18, deposition pages 179-81, ¶¶ 22-24, 1-24, 1-10. By decelerating Mr. Driscoll instead of dismissing him, Bryant merely tried to help him achieve his goals and see him succeed.

To be successful in defeating Bryant's motion, Mr. Driscoll must show that there was an accommodation that would have rendered him otherwise qualified. Mr. Driscoll asked for extra time to take his exams to accommodate for his ADHD. He argues that despite his time-and-a-half accommodation, Bryant denied him "the full extent of the accommodation." ECF No. 1 at 4, ¶¶ 34, 38. Mr. Driscoll has offered two instances in which such a denial occurred. In one instance, it was impossible to provide the full amount of extra time because another class was scheduled to start directly afterward. However, Bryant made clear in its accommodation letter that Mr. Driscoll needed to "make practical arrangements" about his accommodation and it is undisputed that he did not. *See* ECF No. 33-19. In the second instance, Mr. Driscoll has only offered vague allegations that he did not get extra time without asserting any evidence to back up his claim. Mr. Driscoll argues that these two instances created exam anxiety, and that that anxiety affected his ability to perform. The Court finds that any failure was either unavoidable because of the program's requirements or was so insignificant within the larger context of Mr. Driscoll's performance that it could not have been the cause of the deceleration decision. The evidence also is clear that even when given the full time accommodation, Mr. Driscoll's academic performance still did not meet the program requirements.

Next, the Court considers Mr. Driscoll's argument that his inability to participate in the group exams hampered his ability to perform. Mr. Driscoll argues that this amounted to discrimination as he was unable to participate fully in every aspect of the curriculum. ECF No. 1 at 4, ¶¶ 33, 38. This argument fails for several

reasons. First, Mr. Driscoll did not communicate this issue to Bryant until his third term when he was failing and on the brink of dismissal.[12] Second, the record shows that participation in the group exams had little to no effect on his ability to perform in the program. For example, in Orthopedics, Mr. Driscoll had both his full time accommodation and group exam review, and yet he continued to fail. Mr. Driscoll's access, or lack thereof, to group exams was not determinative of his ability to perform.

Finally, Bryant did not deny Mr. Driscoll the ability to seek a noise accommodation during the summer of 2016. *See* ECF No. 1 at 4-5, ¶ 40. Mr. Driscoll has offered no proof of this allegation in the face of Bryant's affidavit that the office remained open and staffed. And even if the office was closed, Mr. Driscoll was in constant contact with Bryant staff and had many chances to voice his need for a noise accommodation and the trouble he faced in requesting it. It was his responsibility to communicate his need for an accommodation and there is no evidence that Mr. Driscoll made any effort to do so. Therefore, Mr. Driscoll's argument in this regard fails.

The Court finds that the undisputed evidence makes clear that Mr. Driscoll was not qualified and no reasonable accommodation would have allowed him to perform successfully in the PA Program. Mr. Driscoll put forth his best effort, Bryant worked with him on a reasonable remediation program as the handbook required and

---

[12] "[A]n academic institution can be expected only to respond to what it knows." *Wynne II*, 976 F.2d at 795.

gave him his requested accommodation, but in the end, Mr. Driscoll could not meet the academic requirements of the PA Program.

### Conclusion

For all these reasons, the Court finds that Mr. Driscoll's ADA, Rehabilitation Act, and breach of contract claims against Bryant and Mr. Amrien fail. The Court GRANTS Bryant's Motion for Summary Judgment on all counts. ECF No. 32.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

August 7, 2019